Dennis E. THOMPSON, Brenda Baines, Robert W. Brown, Ace Clark, Jr., Lawrence Duke, Harvey J. George, Arthur R. Gordon, Stella Guidry, Tom C. Henry, Jr., Earnest Charles Jackson, Alex J. Johnson, Leroy Jones, N.T. Melonson, Sylvestor Plumbar, Jr., Gerald Roman, Leslie Siggers, Sylvia A. Thomas, Rufus Wells, and Ethel Wilson, Plaintiffs,

v.

EXXON MOBIL CORPORATION, Individually and d/b/a ExxonMobil Oil Corporation and d/b/a ExxonMobil Refining & Supply Company, Defendant.

Civil Action No. 1:02–CV–693.

United States District Court, E.D. Texas, Beaumont Division.

Oct. 25, 2004.

pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

## I. *Background*

George, Jackson, and Jones are all African–American males employed as crane riggers and operators in the Transportation Department of the ExxonMobil oil refinery in Beaumont, Texas. They have each worked at the Beaumont refinery for at least thirty years and are all considered "first-class riggers," the highest classification an ExxonMobil employee can achieve when operating and setting up cranes.

ExxonMobil requires crane operators to work the crane on firm, level ground or cribbing. Cribbing is material placed on the ground during a lift to distribute the weight of a crane's outriggers, which project out from the crane to provide support and stability. According to crane operating manuals available to ExxonMobil crane riggers, cribbing materials should be placed together in such a manner as to make one solid form. Outrigger mats, which consist of a solid plastic piece designed to be used under crane outriggers, have been in use at the Beaumont facility since 2000.

On February 11, 2002, Plaintiffs were operating a crane in order to remove relief/safety valves from the roof of a structure. This particular crane had four outriggers, and, during the operation to remove the valves, the boom of the crane was to be positioned over the left-front outrigger, such that the outrigger would carry most of the weight. In February 2002, the decision to use matting and cribbing was left to the discretion of the crane operators and riggers. Plaintiffs initially set up the crane with the left-front outrigger on wet, bare ground, using some lumber and sheet metal as crib-

John Gerard Werner, Reaud, Morgan & Quinn, Beaumont, TX, for Plaintiffs.

Robert J. Hambright, Orgain, Bell & Tucker, Beaumont, TX, Tony P. Rosenstein, D'Andra Millsap Shu, Baker Botts, Houston, TX, for Defendants.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court is Defendant ExxonMobil Corporation's ("ExxonMobil") Motion for Summary Judgment (# 34). ExxonMobil seeks summary judgment on Plaintiffs Harvey J. George ("George"), Earnest Charles Jackson ("Jackson"), and Leroy Jones's ("Jones") (hereinafter collectively referred to as "Plaintiffs") claims alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000h–6, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981. Having reviewed the

bing. The first relief valve was lifted and moved without incident. During the first attempt to lift the second relief valve, the soil under the left-front outrigger began to give way. As a result, Plaintiffs repositioned the crane, placing the left-front outrigger on a concrete pad instead of on soil. Plaintiffs claim that the cribbing used on the initial lift (the lumber and sheet metal) was again placed under the left-front outrigger. George and Jones also claim that plastic mats were placed under the other three outriggers. Jackson, however, testified that no plastic mats were used, and ExxonMobil maintains that photographs from the accident show that no mats or cribbing of any kind was used on any of the outriggers. As Plaintiffs again attempted to lift the second relief valve, the left-front outrigger went through the cement surface, and the crane tipped forward, causing the boom to rest on the roof where the valves were located.

Ronald Clour ("Clour"), a manager in the Transportation Department, was part of an ExxonMobil team, comprised of several managers, that investigated the incident immediately after it occurred. Plaintiffs allege that Clour has a history of discriminatory employment practices. The ExxonMobil investigation team determined that inadequate cribbing was used on the first lift and no cribbing or mats were used on the second lift when the crane tipped. Accordingly, Clour, along with the rest of the team, concluded that the accident was due to human error. Thus, Clour directed Plaintiffs to take a drug and alcohol test, as required by ExxonMobil policy when human error is implicated. Plaintiffs were then sent home pending the results of the tests. They were suspended with pay for two to three days until the tests came back negative.

Plaintiffs contend that concrete pads, such as the one in question, were used successfully many times in the past as support for the crane, with or without additional cribbing or matting. They claim there was a cavity underneath the concrete, which was impossible to foresee. Therefore, according to Plaintiffs, there was no human error, and they should not have been subjected to drug testing or sent home. Plaintiffs assert that the only reason Clour required them to submit to drug testing was because of their race.

In order to upright the tipped crane, ExxonMobil brought in Maxim Crane ("Maxim"), a third-party contractor, after refinery personnel determined a substantially larger crane was needed, which ExxonMobil employees were not trained or qualified to operate. As part of the contract, Maxim was in charge of the operation and assumed responsibility for any damage to the crane during the procedure. Eli Denson ("Denson"), an African–American male, was the ExxonMobil shift superintendent in charge of the crane recovery lift. Clour was not present during this salvage effort. Joining Denson were five ExxonMobil employees who were on site to provide any needed support to Maxim. Three of these employees were African–American males and two were white males. In the effort to lift the crane, a nylon sling was attached to the boom of the fallen crane, but during the lift, the sling broke, and the crane fell again, causing substantial damage. Denson initially determined that the cause of this second accident was equipment failure and not human error. Therefore, Denson did not order drug and alcohol testing of the contractors, who were all Caucasian, or the ExxonMobil employees, both African–American and white, who were assisting the contractors. Further investigation by a team of ExxonMobil employees, however, revealed that Maxim should have used pads in conjunction with the nylon sling, which would have prevented the accident. The ExxonMobil

employees who served as support personnel during the lift did not receive any discipline because "total control" of the lift had been delegated to Maxim.

In March 2002, George, Jackson, and Jones filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination. At the time, they had not been disciplined for their role in the initial crane accident. On April 11, 2002, Plaintiffs each received formal counseling, the least severe form of discipline possible for union employees, and reports confirming the counseling were placed in their personnel files. Plaintiffs' union, the Paper, Allied–Industrial, Chemical and Energy Workers International, filed a grievance on their behalf. In May 2002, at the conclusion of the grievance process, the discipline was reduced to oral coaching, and the counseling reports were removed from their personnel files. Plaintiffs then filed second charges with the EEOC, Jackson on July 23, 2002, and George and Jones on August 2, 2002, alleging that the counseling was in retaliation for their filing the EEOC charge in March 2002.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir.2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999).

"A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505); *see Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan,* 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *accord Harken Exploration Co.,* 261 F.3d at 471; *Merritt–Campbell, Inc.,* 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovants' case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106

S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000); *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996); *see Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.,* 261 F.3d at 471; *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001); *Colson,* 174 F.3d at 506. The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor. *See Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505); *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 412 (5th Cir. 2003); *Martinez,* 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir.), *cert. denied,* 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin v. NationsCredit Corp.,* 307 F.3d 368, 372 (5th Cir.2002); *Harken Exploration Co.,* 261 F.3d at 471.

Nevertheless, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovants' burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown,* 337 F.3d at 541; *see Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.), *cert. denied,* 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner v. Texas Lottery Commission,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celo-*

*tex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *Abandoned Claims*

In their original complaint and attached EEOC charges, Plaintiffs allege racial discrimination and harassment by Clour and other employees of ExxonMobil, which were purportedly reflected in ExxonMobil's promotion practices, disciplinary practices, work assignments, and selection for "step-up" positions. In their amended complaint, Plaintiffs also assert a claim for retaliation. Although ExxonMobil fully briefed all the claims and issues asserted by Plaintiffs in the operative pleadings, the only claims Plaintiffs address in their response to the summary judgment motion are those alleging retaliation and discriminatory disciplinary practices.

Consequently, Plaintiffs are deemed to have abandoned the remainder of their claims by failing to raise them in their responsive brief. *See Scales v. Slater,* 181 F.3d 703, 709 n. 5 (5th Cir.1999); *Yohey v. Collins,* 985 F.2d 222, 224–25 (5th Cir. 1993); *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991); *see also Davis v. Cannon,* 91 Fed.Appx. 327, 329 (5th Cir.2004); *Riggan v. Midland Indep. Sch. Dist.,* 86 F.Supp.2d 647, 659 (W.D.Tex.2000).

### C. *Disparate Treatment Under Title VII and Section 1981*

ExxonMobil contends that summary judgment is proper because Plaintiffs have failed to create a genuine issue of material fact concerning their claim of disparate treatment in disciplinary practices under Title VII or § 1981. Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Desert Palace, Inc. v. Costa,* 539 U.S. 90, 92–93, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.,* 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–18, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)).

"Section 1981 provides that all persons in the United States shall have the same contractual rights as 'white citizens.'" *La-Pierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n. 2 (5th Cir.1996); *see* 42 U.S.C. § 1981(a). More specifically, § 1981 states that every person in the United States shall have the same rights as white citizens regarding "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Felton v. Polles,* 315 F.3d 470, 479–80 (5th Cir.2002); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.,* 160 F.3d 1048, 1049 (5th Cir.1998). Section 1981 further provides that these rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c); *see Felton,* 315 F.3d at 480. "As a general matter, section 1981 serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race. Section 1981 also provides a means of compensating a victim of racial discrimination." *Carroll v. General Accident Ins. Co. of Am.,* 891 F.2d 1174, 1176 (5th Cir. 1990).

■ Claims of employment discrimination brought under § 1981 are governed

by the same evidentiary framework applicable to claims brought under Title VII. *See, e.g., Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir.2004); *Felton,* 315 F.3d at 486; *Harrington v. Harris,* 118 F.3d 359, 367 (5th Cir.1997), *cert. denied,* 522 U.S. 1016, 118 S.Ct. 603, 139 L.Ed.2d 491 (1997); *LaPierre,* 86 F.3d at 448; *Wallace,* 80 F.3d at 1047. Because the same evidentiary burdens apply, a claim that fails on the merits under Title VII, likewise, fails under § 1981.

Discrimination under Title VII or § 1981 can be established through either direct or circumstantial evidence. *See Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir.2003) (citing *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir. 2001), *cert. denied,* 535 U.S. 1078, 122 S.Ct. 1961, 152 L.Ed.2d 1022 (2002)); *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir.2000); *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213, 1216 (5th Cir.1995). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792[, 93 S.Ct. 1817, 36 L.Ed.2d 668] (1973)." *Russell,* 235 F.3d at 222; *see Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Laxton,* 333 F.3d at 578; *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 384 (5th Cir.2003). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West,* 330 F.3d at 384 n. 3; *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir.2002), *cert. denied,* 539 U.S. 926, 123 S.Ct. 2572, 156 L.Ed.2d 602 (2003) (citing *Mooney,* 54 F.3d at 1217). Where, as here, there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Laxton,* 333 F.3d at 578; *Russell,* 235 F.3d at 222; *Wallace,* 80 F.3d at 1047 (citing *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir.1995)); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir.1994) (citing *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089). " 'To establish a *prima facie* case, a plaintiff need only make a very minimal showing.' " *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir.1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 639 (5th Cir. 1985)).

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *See Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817; *Laxton,* 333 F.3d at 578 (citing *Wallace,* 271 F.3d at 219); *West,* 330 F.3d at 384 (citing *Russell,* 235 F.3d at 222); *Rios v. Rossotti,* 252 F.3d 375, 377 (5th Cir. 2001); *Okoye v. University of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512 (5th Cir.2001). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *see Crawford v. Formosa Plastics Corp.,* 234 F.3d 899, 902 (5th Cir.2000). "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *'if believed by the trier of fact,'* would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer v. Albemarle Corp.,* 169 F.3d 962, 966 (5th Cir.1999) (quoting *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742) (emphasis in original); *ac-*

cord *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir.2000).

If the employer meets its burden, " 'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], ... and the sole remaining issue [is] 'discrimination *vel non.*' " *Reeves*, 530 U.S. at 142–43, 120 S.Ct. 2097 (quoting *Hicks*, 509 U.S. at 510, 113 S.Ct. 2742; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)); *see Laxton*, 333 F.3d at 578 ("[t]his causes the presumption of discrimination to dissipate"); *West*, 330 F.3d at 385; *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir.2001); *Russell*, 235 F.3d at 222. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089); *accord Hicks*, 509 U.S. at 507–08, 113 S.Ct. 2742; *Laxton*, 333 F.3d at 578; *Crawford*, 234 F.3d at 902; *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113, 121 S.Ct. 859, 148 L.Ed.2d 772 (2001).

■ "[I]n attempting to satisfy this burden, the plaintiff ... must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089); *accord Hicks*, 509 U.S. at 515, 113 S.Ct. 2742; *Laxton*, 333 F.3d at 578. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.' " *Id.* (citing *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *Wallace*, 271 F.3d

at 220). "An explanation is false or unworthy or credence if it is not the real reason for the adverse employment action." *Id.* (citing *Sandstad*, 309 F.3d at 899).

■ "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097 (emphasis in original); *accord Ratliff v. City of Gainesville*, 256 F.3d 355, 360–62 (5th Cir.2001); *Blow v. City of San Antonio*, 236 F.3d 293, 297 (5th Cir.2001). "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination without further evidence of defendant's true motive." *Laxton*, 333 F.3d at 578; *see Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097; *accord Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385. Hence, a plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment. *See Reeves*, 530 U.S. at 148, 120 S.Ct. 2097; *Ratliff*, 256 F.3d at 362; *Blow*, 236 F.3d at 298; *Russell*, 235 F.3d at 223.

"Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097; *accord Laxton*, 333 F.3d at 578; *Ratliff*, 256 F.3d at 361–62. Yet, such a showing by the plaintiff will not always be adequate to sustain a finding of liability. *See Reeves*, 530 U.S. at 148, 120

S.Ct. 2097; *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002). "[A] showing of pretext does not automatically entitle an employee to a judgment as a matter of law." *Russell*, 235 F.3d at 223 (citing *Hicks*, 509 U.S. at 524, 113 S.Ct. 2742). Indeed, "proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct.'" *Reeves*, 530 U.S. at 146, 120 S.Ct. 2097 (quoting *Hicks*, 509 U.S. at 524, 113 S.Ct. 2742). Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" that properly may be considered by the court when ruling on a motion for summary judgment. *Price*, 283 F.3d at 720 (quoting *Reeves*, 530 U.S. at 148–49, 120 S.Ct. 2097); *accord Crawford*, 234 F.3d at 902.

### 1. *Prima Facie Case of Disparate Treatment*

■ Plaintiffs contend that they were subjected to disparate treatment when they were required to take a drug test and received disciplinary counseling for their role in the first crane incident. To establish a *prima facie* case of disparate treatment, a plaintiff must show that:

(1) he is a member of a protected class;

(2) he is qualified for the position;

(3) he suffered an adverse employment action; and

(4) others outside the class who were similarly situated were treated more favorably than he.

*See Okoye*, 245 F.3d at 512–13; *Rutherford v. Harris County*, 197 F.3d 173, 183 (5th Cir.1999); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.), *cert. denied*, 525 U.S. 1000, 119 S.Ct. 509, 142

L.Ed.2d 422 (1998); *Nieto v. L & H Packing Co.*, 108 F.3d 621, 623 n. 5 (5th Cir. 1997). They must demonstrate that employees outside their protected class received preferential treatment in circumstances nearly identical to theirs. *See Aldrup v. Caldera*, 274 F.3d 282, 287 n. 23 (5th Cir.2001); *Wallace*, 271 F.3d at 221; *Okoye*, 245 F.3d at 512–13; *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304–05 (5th Cir.2000), *cert. denied*, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091–92 (5th Cir.1995).

Under the disparate treatment standard, Plaintiffs have established the first two elements of a *prima facie* case, *i.e.*, they are members of a protected class and they are qualified for the positions they hold. They have not, however, established the third and fourth elements of a *prima facie* case, *i.e.*, that they suffered an adverse employment action or that others outside the class who are similarly situated were treated more favorably than they.

### a. *Adverse Employment Action*

■ ExxonMobil contends that Plaintiffs have not shown that they were subjected to an adverse employment action under Title VII or § 1981. "Title VII was only designed to address 'ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir.1999) (emphasis in original) (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997)); *accord Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir.), *cert. denied*, 540 U.S. 817, 124 S.Ct. 82, 157 L.Ed.2d 34 (2003); *Felton*, 315 F.3d at 486 (holding that ultimate employment decision requirement applies in

disparate treatment as well as retaliation cases); *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir.2001); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 540 (5th Cir.1998); *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir.1997). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram*, 361 F.3d at 282 (quoting *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.), *cert. denied*, 540 U.S. 817, 124 S.Ct. 82, 157 L.Ed.2d 34 (2003)).

Actionable adverse employment actions are generally limited to "tangible employment action[s] [that] constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *see Banks*, 320 F.3d at 575; *Mota*, 261 F.3d at 519; *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir.1999); *Burger*, 168 F.3d at 878; *Webb*, 139 F.3d at 539; *Messer*, 130 F.3d at 135; *Mattern*, 104 F.3d at 707 ("[u]ltimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating"). An ultimate employment decision, in itself or through its direct consequences, must effect a material change in the terms or conditions of employment. *See Burger*, 168 F.3d at 879; *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir.1997). "An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than 'mere tangential effect on a possible future ultimate employment decision.' " *Mota*, 261 F.3d at 519 (quoting *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir.2000)); *accord Felton*, 315 F.3d at 487; *see Messer*, 130 F.3d at 140.

■ "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Watts*, 170 F.3d at 512; *see Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir.1997); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir.1996). " 'Although actions short of termination may constitute an adverse employment action within the meaning of the statute, not everything that makes an employee unhappy is an actionable adverse action.' " *Greaser v. Missouri Dep't of Corr.*, 145 F.3d 979, 984 (8th Cir.), *cert. denied*, 525 U.S. 1056, 119 S.Ct. 620, 142 L.Ed.2d 559 (1998) (quoting *Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir.1997)); *accord Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997); *Smart*, 89 F.3d at 441. Interlocutory or mediate decisions, even those that can lead to an ultimate employment decision, are not adverse employment actions for purposes of the employment discrimination statutes. *See Mattern*, 104 F.3d at 708.

■ Documented reprimands alone, while possibly affecting future employment decisions, do not constitute an adverse employment action. *See Felton*, 315 F.3d at 487; *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 470 (5th Cir.2002). Similarly, negative performance evaluations, even if undeserved, are not adverse employment actions. *See Speer*, 123 F.3d at 664; *Smart*, 89 F.3d at 442; *see also Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir.1994). In short, "[n]egative performance evaluations, standing alone, cannot constitute an adverse employment action." *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir.1998) (citing *Smart*, 89 F.3d at 442); *accord Felton*, 315 F.3d at 488; *De la Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 132 F.3d 38, No. 96–17034, 1997 WL 753359, at

*2 n. 3 (9th Cir. Dec.2, 1997), *cert. denied,* 525 U.S. 814, 119 S.Ct. 50, 142 L.Ed.2d 38 (1998) (citing *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1465 (9th Cir.1994), *cert. denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995)); *Montandon,* 116 F.3d at 359.

■ In this instance, Plaintiffs claim that ExxonMobil's mandating them to undergo drug testing, during which, at least according to the testimony of Jones, they were required to urinate in the presence of another ExxonMobil employee, was an adverse employment action. In addition, Plaintiffs complain that they were immediately sent home in a taxi and were not allowed to return to work for several days pending the results of the tests. Plaintiffs argue that this caused them emotional harm because other ExxonMobil employees would have assumed they were using drugs and that is why they were sent home.

■ The Fifth Circuit has not addressed whether drug testing may ever be considered an adverse employment action. Plaintiffs rely on *Stockett v. Muncie In. Transit Sys.,* a Seventh Circuit case holding that subjecting an employee to a drug test because of an improper discriminatory animus could be "an adverse employment action that is actionable under Title VII." 221 F.3d 997, 1002 (7th Cir.2000); *see also Lawrence v. United Airlines, Inc.,* No. CIV. 3:01–CV–0809–H, 2002 WL 1489536, at *3 (N.D.Tex. July 10, 2002) (citing *Stockett,* 221 F.3d at 1001–02, but also noting that the Fifth Circuit has not addressed the matter). Even under a liberal reading of *Stockett,* however, an improper discriminatory animus must be demonstrated before an adverse employment action can be found. In this case, Plaintiffs were drug-tested following an accident in which the cause was initially determined to be human error. ExxonMobil provides uncontroverted evidence that, once it is as-

certained that human error may be involved in an accident at the refinery, drug testing, which must be conducted in front of an ExxonMobil observer, is mandatory. The court in *Stockett* found that a reasonable and legitimate request for a drug test made pursuant to a published drug policy "does not constitute the type of adverse employment action that Title VII is designed to prevent." 221 F.3d at 1002. Accordingly, a drug test, such as the one Plaintiffs were required to take, performed pursuant to an established company policy, does not rise to the level of an adverse employment action for which the anti-discrimination provision of Title VII or § 1981 provides relief.

■ Plaintiffs further contend that the discipline they received as a result of the accident was an adverse employment action. Initially, Plaintiffs received a formal counseling with a confirmatory report placed in their personnel files. This is the lowest level of discipline available at the Beaumont refinery. The formal counseling was subsequently reduced to an oral coaching, which is not considered discipline, and the counseling reports were removed from Plaintiffs' personnel files. Disciplinary write-ups, however, do not constitute adverse employment actions. "[Plaintiff's] receipt of a single disciplinary warning—without an attendant change in the terms or conditions of his employment—does not qualify as an ultimate employment decision." *Carthon v. Johnson Controls, Inc.,* 100 Fed.Appx. 993, 997 (5th Cir.2004); *see Mattern,* 104 F.3d at 707. The Fifth Circuit has repeatedly stated that "an employment action that does not affect job duties, compensation, or benefits" is not an adverse employment action. *Banks,* 320 F.3d at 575; *see Pegram,* 361 F.3d at 282. Plaintiffs provide no evidence that the disciplinary counseling they received, or the oral couching to which it was

reduced, affected their job duties, compensation, or benefits. Accordingly, Plaintiffs have not shown that they were subjected to an actionable adverse employment action as a result of the crane incident.

### b. *Similarly Situated Persons*

Even assuming the drug tests or the disciplinary measures were deemed adverse employment actions, Plaintiffs are unable to establish a *prima facie* case of disparate treatment because they have not demonstrated that similarly situated persons outside the protected group were treated more favorably. Plaintiffs argue that the Maxim crew and the ExxonMobil employees on hand during the second lift were similarly situated persons who were treated more favorably because they were not subjected to drug testing. In the Fifth Circuit, "to establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances." *Okoye,* 245 F.3d at 514 (internal quotations and brackets omitted).

▮ Here, however, Plaintiffs have not shown that those involved in the second crane accident were similarly situated. The second crane lift was conducted under the total control of an outside contractor, Maxim. ExxonMobil provides uncontroverted evidence that its employees on site, a majority of whom were African-American, were present only to support the lift and not to determine how it was to be accomplished or what equipment was to be used. Plaintiffs, on the other hand, were in charge of the first lift and were vested with discretion in determining how it was to be conducted. In addition, the first and second lifts were overseen by different supervisors. The Plaintiffs were supervised by Clour, who, along with an Exxon-Mobil investigation team, determined the accident to be the result of human error, thus necessitating a drug test. The super-

visor on scene during the Maxim lift was Denson, who outranked Clour, and who initially ruled the accident to be the result of equipment failure, thus obviating the necessity for a drug test. A demonstration of substantial similarity generally requires a showing that a common supervisor was involved in the decision making. *See Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 618 (7th Cir.2000). "When 'different decision-makers are involved, two decisions are rarely similarly situated in all relevant aspects.'" *Id.* (quoting *Stanback v. Best Diversified Prods., Inc.,* 180 F.3d 903, 910 (8th Cir.1999)). Accordingly, decisions made by different supervisors "are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." *Id.* Due to the fact that the two lifts involved two different crews (one being comprised of an outside contractor), two different supervisors, and two different causation findings, the circumstances were not sufficiently comparable to be viewed as indicative of discrimination.

Hence, Plaintiffs are unable to establish a *prima facie* case of disparate treatment involving ExxonMobil's disciplinary practices. Therefore, summary judgment is proper with respect to Plaintiffs' claims of discrimination in violation of Title VII and § 1981.

### D. *Retaliation Under Title VII and Section 1981*

ExxonMobil also contends that Plaintiffs have failed to create a genuine issue of material fact concerning their claim of retaliation. Plaintiffs assert that ExxonMobil retaliated against them for filing their initial EEOC charge in March 2002 by disciplining them in April 2002 for the crane accident, which occurred in February 2002. Title VII prohibits retaliation against an

employee who has engaged in activity protected by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3.

 The anti-retaliation provision has two components—an opposition clause and a participation clause. *See Douglas v. DynMcDermott Petroleum Operations Co.,* 144 F.3d 364, 372 (5th Cir.1998), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 798, 142 L.Ed.2d 660 (1999); *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1185 (11th Cir. 1997). "The opposition clause of § 2000e–3(a) requires the employee to demonstrate that [he] had at least a 'reasonable belief' that the practices [he] opposed were unlawful." *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir.1996); *see Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 752 (7th Cir. 2002); *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 969 (9th Cir.2002). The participation clause, however, does not include the "reasonable belief" requirement and provides broad protection to an employee who has participated in a Title VII proceeding. *See Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1312 (6th Cir.1989); *see also Hashimoto v. Dalton,* 118 F.3d 671, 680 (9th Cir.1997), *cert. denied,* 523 U.S. 1122, 118 S.Ct. 1803, 140 L.Ed.2d 943 (1998). The Fifth Circuit has held that "the familiar *McDonnell Douglas* burden-shifting framework applies in Title VII retaliation cases." *Mato v. Baldauf,* 267 F.3d 444, 452 (5th Cir.2001), *cert. denied,* 536 U.S. 922, 122 S.Ct. 2587, 153 L.Ed.2d 777 (2002) (citing *Rios,* 252 F.3d at 380; *Rubinstein,* 218 F.3d at 401–02);

*see Aldrup,* 274 F.3d at 286; *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir.2001). "The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context." *Rios,* 252 F.3d at 380; *accord Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318, 325 (5th Cir.2002); *Aldrup,* 274 F.3d at 286; *Medina,* 238 F.3d at 684. Racial discrimination and retaliation claims based on § 1981 are also considered under the Title VII rubric of analysis. *See Raggs,* 278 F.3d at 469. "[R]etaliation claims under § 1981 and Title VII ... are parallel causes of action. Each requires proof of the same elements in order to establish liability." *Foley v. University of Houston Sys.,* 355 F.3d 333, 340 n. 8 (5th Cir.2003). Therefore, after the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for its actions. *See Gee v. Principi,* 289 F.3d 342, 345 (5th Cir.2002); *Aldrup,* 274 F.3d at 286; *Rios,* 252 F.3d at 380; *Medina,* 238 F.3d at 684. If the employer meets its burden, the employee then bears the ultimate burden of showing that the reasons given by the employer are a pretext for retaliation. *See Gee,* 289 F.3d at 345; *Aldrup,* 274 F.3d at 286; *Rios,* 252 F.3d at 380; *Medina,* 238 F.3d at 684. To carry their ultimate burden, Plaintiffs must demonstrate that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity. *See Mato,* 267 F.3d at 450; *Rios,* 252 F.3d at 380; *Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir.2001).

 To establish a *prima facie* case of retaliation under Title VII or § 1981, a plaintiff must show:

(1) he engaged in statutorily protected activity under Title VII or § 1981;

(2) an adverse employment action occurred; and

(3) a causal connection exists between the protected activity and the adverse employment action.

*See Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir.2004); *Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 655 (5th Cir.2004); *Foley,* 355 F.3d at 339; *Zaffuto v. City of Hammond,* 308 F.3d 485, 492 (5th Cir.2002); *Perez,* 307 F.3d at 325; *Soledad v. United States Dep't of Treasury,* 304 F.3d 500, 506–07 (5th Cir.2002); *Gee,* 289 F.3d at 345; *Mota,* 261 F.3d at 519. "An employee has engaged in protected activity when [he] has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas,* 144 F.3d at 372–73 (quoting 42 U.S.C. § 2000e–3(a)); *accord Grimes v. Texas Dep't of Mental Health & Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996). Here, Plaintiffs indisputably engaged in protected activity when they filed a charge of employment discrimination with the EEOC, thus establishing the first element of a *prima face* case of retaliation. " '[F]iling an administrative complaint is clearly protected activity.' " *Walker,* 214 F.3d at 629 (quoting *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995)).

As with their disparate treatment claim, however, Plaintiffs cannot establish the second element of a *prima facie* case of retaliation, that they suffered an adverse employment action. Plaintiffs allege that the adverse employment action they suffered was receiving counseling for the crane incident in April 2002, two months after the accident and one month after filing their first EEOC charge. One month later, the counseling was reduced to oral coaching, and the counseling reports were removed from their files. Plaintiffs argue that the length of time between the accident and the discipline was unusually long and, thus, it could be inferred that the discipline was in retaliation for their filing an EEOC charge. At deposition, Clour conceded that discipline for an accident such as the one involving Plaintiffs would have generally been determined within a few days. As with their disparate treatment claim, however, the discipline Plaintiffs received does not rise to the level of an adverse employment action within the purview of Title VII or § 1981. *See Clayton v. Rumsfeld,* 106 Fed.Appx. 268, 270, No. 03–51167, 2004 WL 1739465, at *2 (5th Cir. Aug.4, 2004) (holding that the adverse employment action requirement is the same for both discrimination and retaliation claims).

Because they are unable to establish a *prima facie* case due to the lack of an actionable adverse employment action, Plaintiffs cannot prevail on their claims of retaliation under Title VII or § 1981. Therefore, summary judgment is proper with respect to Plaintiffs' retaliation claims.

## III. *Conclusion*

Accordingly, ExxonMobil's Motion for Summary Judgment as to the three Plaintiffs' claims is GRANTED. There remain no material facts in dispute as to George, Jackson, and Jones's claims alleging race discrimination and retaliation in violation of Title VII and § 1981, and ExxonMobil is entitled to judgment as a matter or law

IT IS SO ORDERED.