In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2692

Huston Stockett,

Plaintiff-Appellant,

v.

Muncie Indiana Transit System,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97 C 645--John P. Godich, Chief Magistrate.


Argued May 15, 2000--Decided July 21, 2000


Before Cudahy, Flaum, and Evans, Circuit Judges.

Flaum, Circuit Judge.  Huston Stockett sued his
employer, the Muncie Indiana Transit System
("MITS"), for race discrimination in violation of
42 U.S.C. sec. 2000e-2(a) (Title VII). The
district court granted summary judgment for the
defendant, and for the reasons stated herein we
affirm.

I.  BACKGROUND

In 1989, MITS adopted a zero tolerance Alcohol
and Substance Abuse Policy (the "Drug Policy").
Under this Policy, MITS may test any employee for
drugs and alcohol who is "reasonably suspected of
being impaired or under the influence" while on
MITS property. Any employee who tests positive is
subject to immediate termination. Employees who
are concerned that they may have a drug or
alcohol abuse problem are given a one-time
opportunity to enter an Employee Assistance
Program ("EAP") to receive treatment and
counseling. Employees who test positive for drugs
are subject to termination regardless of their
participation in this counseling program.
Huston Stockett, a black man, was employed as a
bus driver for MITS. On August 17, 1995, Stockett
returned to work from a one week vacation and was
called into a meeting with MITS supervisors. The
purpose of the meeting was to discuss a complaint
of sexual harassment that had been filed against

Stockett. Later that day, Stockett was called to another meeting with the same supervisors to discuss the same issue. MITS ultimately concluded that there was insufficient evidence to take any further action regarding the complaint and did not pursue the allegations of sexual harassment against Stockett.

However, prior to the meetings, MITS had received an anonymous report that Stockett had been seen smoking crack. Kevin Barton, a MITS supervisor who had been trained to recognize signs of alcohol or drug influence, observed Stockett during the meetings. Mr. Barton noticed that Stockett had red eyes and that his demeanor was uncharacteristically calm. Based on these facts, Mr. Barton concluded that there was probable cause to suspect that Stockett was under the influence of drugs. Pursuant to the Drug Policy, Stockett was required to submit to a drug test, and he tested positive for drug use. MITS gave Stockett the option of voluntarily resigning or being terminated. Stockett chose termination, and his position was subsequently filled by a black woman.

Robert Merryweather is a white MITS employee. Prior to the adoption of the 1989 Drug Policy, Merryweather tested positive for drug use and was permitted to enter a rehabilitation program without losing his job. After completing the program, Merryweather returned to work subject to a number of probationary conditions. On August 27, 1991, Merryweather was required to submit to another drug test. The result was negative, but Merryweather enrolled in a voluntary drug treatment program under MITS's EAP. In 1994, MITS received two complaints alleging that the complainant had purchased drugs from Merryweather and had seen Merryweather using drugs. The complainant was known to MITS as a person who had caused problems for and complained about MITS employees in the past. After the second complaint, a MITS supervisor, who was trained to recognize the signs of drug or alcohol influence, observed Merryweather for two days but did not detect any signs of drug use. Merryweather was not asked to submit to a drug test following this observation period.

On April 23, 1997, Stockett filed suit against MITS, claiming that he was discriminated against on the basis of his race in violation of Title VII when he was required to take a drug test and was fired for failing it while Merryweather, a similarly-situated white employee, was treated more favorably. The district court granted summary judgment for MITS, and Stockett now appeals.

## II.  DISCUSSION

Stockett contends that the district court erred in granting summary judgment for MITS on his race discrimination claims under Title VII. We review a district court's grant of summary judgment de novo, viewing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party. See Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1302 (7th Cir. 1991). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see James v. Sheahan, 137 F.3d 1003, 1006 (7th Cir. 1998).

Stockett was fired pursuant to clearly established MITS policy because he reported to work to drive a bus while under the influence of drugs. Stockett does not contest that he failed the drug test, nor does he contest that MITS was entitled to fire him when he failed that test. Rather, Stockett contends that he was required to take the drug test because of his race and that this treatment was an adverse employment action that violated his rights under Title VII.

A plaintiff may meet his burden of proof under Title VII by offering either direct proof of discriminatory intent or by proving disparate treatment through the indirect, burden-shifting method outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997); Sample v. Aldi Inc., 61 F.3d 544, 547 (7th Cir. 1995). In this case, Stockett offers no direct proof of discrimination but attempts to meet his burden through showing discriminatory treatment under the McDonnell Douglas test.

To prove discrimination using the McDonnell Douglas method, the plaintiff must first make out a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Where a plaintiff alleges discriminatory treatment, he must demonstrate that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly-situated employees outside of his protected class more favorably. See Plair, 105 F.3d at 347; Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1132 (7th Cir. 1994). Once a plaintiff has made this showing, there is a presumption that he was discriminated against, and the employer must come forward with a legitimate, non-discriminatory reason for the employment action. See McDonnell Douglas, 411 U.S. at 802; Lenoir, 13 F.3d at 1133. At this

stage, the employer need not prove that it was actually motivated by the proffered reason. Rather, an employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981). Once the defendant has met this burden of production, the plaintiff must prove by a preponderance of the evidence that the reason offered by the defendant is merely a pretext for discrimination. Id. at 253; Plair, 105 F.3d at 348. While the McDonnell Douglas approach is often called a "burden shifting" method of proof, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

It is undisputed that Stockett is a member of a protected class. In addition, MITS does not allege that Stockett was not meeting its legitimate employment expectations prior to requesting that he take the drug test at issue in this case. However, MITS contends that Stockett fails to make out a prima facie case of discrimination because requiring an employee to take a drug test is not an adverse employment action and because MITS did not treat similarly-situated non-black employees more favorably than Stockett.

An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993); see Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996). Adverse employment actions encompass more than simply the termination of employment or a decrease in salary. They also may include actions such as bestowing on an employee "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Crady, 993 F.2d at 136. It is well established that conditions of employment that are designed to harass and humiliate employees because of their race are actionable adverse employment actions under Title VII. See Patterson v. McLean Credit Union, 491 U.S. 164, 180 (1989) ("Racial harassment in the course of employment is actionable under Title VII's prohibition against discrimination in the 'terms, conditions, or privileges of employment.'"); Johnson v. City of Fort Wayne, 91 F.3d 922, 938 (7th Cir. 1996) ("'Title VII affords employees the right to work

in an environment free from discriminatory intimidation, ridicule, and insult.'") (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) and applying its rationale to race-based harassment); Daniels v. Essex Group, Inc., 937 F.2d 1264, 1270 (7th Cir. 1991). As the Supreme Court has recognized, a suspicion-based drug test can be a "badge of shame" for those subjected to the test. Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 663 (1995) (recognizing the possibility of the arbitrary and discriminatory imposition of suspicion-based drug tests). Therefore, under circumstances where a drug test is not performed in a routine fashion following the regular and legitimate practices of the employer, but is conducted in a manner that harasses or humiliates employees, requiring that the employee submit to the drug test as a condition of employment may be an adverse employment action that is actionable under Title VII. See Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624-25 (8th Cir. 1995) (holding that requiring the plaintiff to submit to a drug test was an actionable adverse employment action under Title VII where there was no reasonable suspicion that the employee was under the influence of drugs and there was a question of fact as to whether the employer's proffered non-discriminatory reason was pretextual).

In this case, however, Stockett does not show that requiring him to submit to a drug test was the type of harassing act that constitutes an adverse employment action. MITS only requested that Stockett take the test after it had received a report that Stockett was using drugs and after a trained observer determined that Stockett exhibited the signs of a person who was under the influence of a controlled substance. This reasonable and legitimate request made pursuant to MITS's published Drug Policy does not constitute the type of adverse employment action that Title VII is designed to prevent. See North v. Madison Area Ass'n for Retarded Citizens-Developmental Ctrs. Corp., 844 F.2d 401, 409 (7th Cir. 1988) (noting that racial harassment must be "severe or pervasive" to be actionable under Title VII); see also Johnson, 91 F.3d at 938.

Furthermore, Stockett has not demonstrated that similarly-situated non-black employees were treated more favorably. While Stockett asserts that Robert Merryweather, a white employee, was not required to take a drug test under circumstances analogous to those under which Stockett was tested, this contention is unsupported by the record. Both Stockett and Merryweather were accused by outside informants of using drugs, and both employees were then observed by MITS supervisors trained to recognize

signs of alcohol or drug influence. While the supervisor who was observing Stockett concluded that there was probable cause to suspect Stockett was under the influence of drugs, the supervisor observing Merryweather found no signs of drug use and concluded there was no probable cause to test Merryweather. Rather than treating the two employees differently, the MITS supervisors treated them identically--observing them for signs of drug use after allegations were made against them and requiring testing only if those observations yielded probable cause to do so.

Stockett also alleges that Merryweather was treated more favorably because Merryweather was permitted to enter the EAP for treatment two times when the Drug Policy allowed employees to use this program only once and Stockett did not use the EAP at all. However, Merryweather used the program for the first time before the Drug Policy was instituted. The second time Merryweather entered the program, he did so after submitting to the requested drug test and receiving a negative result. Stockett, on the other hand, did not request that he be admitted to the EAP program until after he had tested positive for drugs. We find nothing in this series of events that demonstrates that Merryweather was treated more favorably than Stockett with respect to his use of the EAP. See Anderson v. Lewis Rail Serv. Co., 868 F.2d 774, 775 (5th Cir. 1989) (holding that black plaintiffs who were fired and not rehired after failing drug tests were not similarly situated to white employees who were fired and rehired after failing similar tests because the white employees had undergone voluntary drug rehabilitation which the black employees had foregone).

We find no disparity in MITS's treatment of Merryweather and Stockett, and Stockett has proffered no other evidence that he was required to take a drug test because of his race. Therefore, we conclude that Stockett has not made out a prima facie case of discrimination under Title VII, and the district court did not err in granting summary judgment to MITS.

III.  CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of MITS is Affirmed.