Louise PENNINGTON, Plaintiff–
Appellant,

v.

POLYGRAM GROUP DISTRIBUTION,
Defendant–Appellee.

No. 99–3919.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 15, 2000.

Decided Jan. 25, 2001.

Before POSNER, EASTERBROOK, KANNE, Circuit Judges.

## ORDER

Following Louise Pennington's termination from PolyGram Group Distribution, she filed this lawsuit alleging discrimination based on her age and sex in violation of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964. The district court granted summary judgment for PolyGram finding that Pennington could not prove that PolyGram's reasons for terminating her were pretextual, and she now appeals. Because Pennington did not have any evidence that undermined PolyGram's explanations for its action, we affirm.

In the 1990s PolyGram, a record and film distributor, employed four sales representatives, including Pennington, in its Chicago office. Pennington was hired in 1980. At the time of her termination in 1997, Pennington was 55 years old, and the three remaining sales representatives were all younger than she was: Beverly Moore–Mundy (age 46), Geri Kaufman (age 41), and Richard Krupa (age 38).

When PolyGram hired Krupa in 1990, it reduced the territory of the other Chicago sales representatives in order to give Krupa an account base and to allow the others to devote more time to their customers. Between 1990 and 1995, PolyGram continued to assign additional territory to Krupa to increase his account base: Omaha in 1990, Wisconsin in 1993, and St. Louis in 1995. In 1997 PolyGram assigned Krupa the Kansas City accounts. Throughout the 1990s, however, PolyGram also assigned new accounts to Pennington, some of which were taken from Krupa's account base. From 1990 through 1995, Pennington's sales exceeded Krupa's.

PolyGram experienced a downturn in business in the early 1990s when a number of its customers in the music industry suffered economic difficulties. In 1996 PolyGram instructed Bill Schulte, the Midwest Regional Director, to review the business affairs of the Chicago office and to consider eliminating one of the four sales representative positions. Also in 1996, Pennington's sales began to decline, primarily because of the downturn in the music industry. Many of her customers went out of business, and she suffered a substantial decrease in her account base. Her 1996 gross sales figure was 60% lower than her previous year's sales. No other sales representative in her office experienced a decline.

In February 1997 Schulte and Robert Colosi, the manager of the Chicago office, met with Pennington about her status with PolyGram, and Pennington agreed that one position would need to be eliminated. Schulte and Colosi advised Pennington that, due to the dramatic decrease in her account base, she would most likely be the representative PolyGram would terminate. PolyGram terminated Pennington in August 1997. Schulte and Colosi informed Pennington that her performance was not at issue, but that PolyGram could no longer justify her position, especially given the drastic decrease in her account base.

Following Pennington's termination, PolyGram implemented a nationwide initiative to restructure their Latino music accounts. PolyGram decided to give all Latino music accounts to PolyGram Latino, one of the record labels distributed by PolyGram. At the time of her departure, six of Pennington's ten remaining accounts were Latino music. After the restructuring, these accounts were transferred to PolyGram Latino.

Pennington filed a charge of discrimination with the Equal Employment Opportunity Commission. After receiving a right to sue letter, she filed this lawsuit alleging violations of the ADEA and Title VII. The district court granted summary judgment to PolyGram. With respect to the ADEA claim, the district court found that Pennington could establish a prima facie case of discrimination. PolyGram then offered two nondiscriminatory reasons for terminating her: the necessary reduction in force and Pennington's shrinking account base. The district court concluded that Pennington had not produced evidence from which a rational factfinder could infer that PolyGram lied about its reasons for her dismissal. In analyzing Pennington's Title VII claim, the district court assumed *arguendo* that Pennington could establish a prima facie case of sex discrimination and then determined that Pennington again could not show that any of Poly-Gram's asserted reasons for the termination were pretextual.

We review a grant of summary judgment de novo. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir.2000). In so doing, we draw all inferences in the light most favorable to the nonmoving party. *See Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1000 (7th Cir.2000).

■ Under both the ADEA and Title VII, the *McDonnell Douglas* burden-shifting analysis offers a framework for establishing discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612,

617 (7th Cir.2000) (ADEA); *Stockett*, 221 F.3d at 1000 (Title VII). A plaintiff must first set forth a prima facie case of discrimination, after which the burden shifts to the employer to offer legitimate nondiscriminatory reasons for the termination. *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009 (7th Cir.2000). In order to prevail, then, the plaintiff must rebut the employer's legitimate reason by proving that it is merely a pretext for discrimination. *See id.*

■ Even assuming that Pennington could prove a prima facie case of age or sex discrimination, she did not carry her burden by establishing pretext. PolyGram offered legitimate, nondiscriminatory reasons for Pennington's termination.[1] Poly-Gram asserted that it terminated Pennington as part of a reduction in force and because she had lost the greatest amount of her account base. On appeal, Pennington concedes that she "did not, and in fact could not, prove these 'facts' to be pretextual." She does not dispute the fact that her account base had shrunk the most or the fact that there was a need to reduce the sales force. Pennington argues instead that PolyGram discriminated against her by assigning accounts to Krupa, a younger male salesperson, despite her shrinking sales base and her requests to take those accounts. PolyGram only reassigned accounts when there were enough to support four salespeople. Once the number of accounts had dropped and could only support three salespeople, PolyGram could not reassign, and so Pennington was

---

1. Pennington contends that PolyGram's proffered reasons for terminating her are not non-discriminatory. She bases this argument on the restructuring of the Latino music accounts, which was, according to Pennington, discrimination on the basis of her national origin. When PolyGram decided to restructure the Latino music accounts at a national

level, however, Pennington had already lost a substantial portion of her sales. Further, the restructuring was not implemented in Chicago until after Pennington left. Consequently, this evidence does not bolster Pennington's argument that PolyGram failed to present legitimate and nondiscriminatory reasons for her termination.

terminated. Moreover, she provided no evidence to demonstrate that PolyGram did not honestly believe the reasons it offered for her termination. Consequently, Pennington has not met her burden of producing evidence that PolyGram was offering a "phony reason" for her termination, *see Paluck,* 221 F.3d at 1013, and we agree with the district court that no rational factfinder could infer that PolyGram lied about its reasons for the termination.

AFFIRMED.