Cecil W. WATSON, Plaintiff–Appellant,

v.

John E. POTTER, Postmaster General of the United States,* Defendant–Appellee.

No. 00–3769.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 20, 2001.**

Decided Nov. 20, 2001.

---

* Pursuant to Fed. R.App. P. 43(c), John E. Potter is substituted as a party for William Henderson.

** After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before WOOD, RIPPLE, and WILLIAMS, Circuit Judges.

## ORDER

Cecil Watson, an African–American male, sued the Postmaster General of the United States ("Postal Service") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, alleging various acts of race discrimination, sex discrimination, and retaliation. The district

court dismissed Mr. Watson's sex discrimination claims for failure to exhaust his administrative remedies. The district court then granted summary judgment in the Postal Service's favor on the remaining claims, concluding that Mr. Watson presented no direct evidence of discrimination and failed to establish a prima facie case of race discrimination and retaliation under the indirect burden-shifting approach. Mr. Watson appeals, and we affirm.

## I. Background

Mr. Watson began working in 1984 as a letter carrier for the Postal Service in Addison, Illinois. In 1990 he was denied a promotion to a managerial position, and, after an investigation, the Equal Employment Opportunity Commission ("EEOC") found that the denial was based on Mr. Watson's race and recommended that he be promoted. When the Postal Service failed to promote him, Mr. Watson filed suit under Title VII. *See Watson v. Henderson*, 222 F.3d 320, 321 (7th Cir. 2000). That case is still pending in the district court.

By 1995 Mr. Watson had become a delivery supervisor at the Addison facility, responsible for supervising one of two delivery units. His duties included assessing the volume of mail received, ensuring an adequate number of mail carriers, and determining when to deliver bulk mail. Another supervisor, Janet Hopkins (African–American), was responsible for the other delivery unit. In addition to Mr. Watson and Ms. Hopkins, there were two substitute delivery supervisors, Yolanda Rader (African–American) and Mike Gluecklich (Caucasian), to fill in when Mr. Watson or Ms. Hopkins was absent. On April 14 and April 17, 1995, Mr. Watson's supervisor, Annie Adams (African–American), ordered him to supervise both delivery units, rather than his usual one delivery unit, because she was short-staffed. On both days, Ms. Hopkins, Ms. Rader, and Mr. Gluecklich were unavailable to fill in.

Two months later, during the week of June 19, 1995, Mr. Watson was scheduled to attend a "Supervisory Administrative Basics" training class. Because the class conflicted with his regularly scheduled day off, Mr. Watson requested to switch his day off to June 17th. Mr. Watson testified at his deposition that it was the Postal Service's regular practice to approve such a switch when an employee was scheduled for training on his regularly scheduled day off. But in her declaration in support of summary judgment, Ms. Adams stated that she denied Mr. Watson's request because he was the only available supervisor to work on June 17th. Mr. Watson was paid overtime for attending class on his regularly scheduled day off.

In addition to the "Supervisory Administrative Basics" class, Mr. Watson was required to attend a "Communications Skills Training" class. The Postal Service required Mr. Watson to attend these classes as part of a settlement agreement with a Caucasian Postal employee, Robert Houlihan, who had filed a race discrimination claim against the Postal Service and had identified Mr. Watson as the supervisor who had discriminated against him.

In September 1999 Mr. Watson sued the Postal Service under Title VII, alleging race and sex discrimination and retaliation because the Postal Service required him to supervise both mail delivery units on April 14 and April 17, 1995, refused to switch his day off when he was scheduled to attend training on his regularly scheduled day off, and required him to attend basic supervisory training and communication skills training. The district court dismissed Mr. Watson's sex discrimination claim for failure to exhaust administrative remedies. The court then granted summary judgment in the Postal Service's favor on the

remaining claims, concluding that Mr. Watson "did not suffer an adverse employment action nor were similarly situated employees treated differently than Watson." The court also concluded that Mr. Watson had no retaliation claim because Mr. Watson did not show a causal connection between his protected expression (filing a discrimination charge with the EEOC in 1990) and any of the alleged adverse employment actions in 1995.

II. Analysis

We review the district court's grant of summary judgment *de novo* and construe the evidence in the light most favorable to the non-moving party. *Curry v. Menard, Inc.*, 270 F.3d 473, 475 (7th Cir.2001). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c).

A. Race discrimination

■ To establish a *prima facie* case of race discrimination, Mr. Watson must show that (1) he was a member of a protected class; (2) he was meeting the Postal Service's legitimate expectations; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 784 (7th Cir.2001). If the Postal Service then articulates a legitimate, nondiscriminatory reason for its employment action, Mr. Watson has the burden to prove that the Postal Service's articulated reason is pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Curry*, 270 F.3d 473, 475.

■ On appeal Mr. Watson argues that the district court erred in concluding that he had not established an adverse employ-

ment action. Although his argument is somewhat difficult to discern, he seems to suggest that the Postal Service rendered adverse employment actions when it required him to supervise both mail delivery units on April 14 and April 17, 1995, refused to switch his day off when he was scheduled to attend training on his regularly scheduled day off, and required him to attend basic supervisory training and communication skills training. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir.2001).

■ Mr. Watson first contends that being ordered on April 14 and April 17, 1995, to supervise two delivery units instead of his usual one delivery unit was an adverse employment action. We disagree. Temporarily assigning a minor amount of extra work is not an adverse employment action because it is only "a mere inconvenience," *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir.2001), and is not "akin to a demotion or a reassignment entailing significantly different job responsibilities," *Reinhold v. Virginia*, 151 F.3d 172, 175 (4th Cir.1998); *see also Halloway v. Milwaukee County*, 180 F.3d 820, 826 (7th Cir.1999) (finding no adverse employment action where plaintiff temporarily had inadequate offices, support staff, and materials); *Brown v. Brody*, 199 F.3d 446, 457 (D.C.Cir.1999) (finding no adverse employment action where plaintiff was temporarily assigned to an undesirable position); *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir.1999) (finding no adverse employment action when Kroger expanded plaintiff's

duties to include mopping the floor and cleaning the chrome in the produce department); *B.T. Jones v. Flagship Int'l*, 793 F.2d 714, 721 (5th Cir.1986) (finding no adverse employment action because plaintiff's increased responsibilities were not undue in relation to her position).

Mr. Watson next argues that the Postal Service's refusal to change his day off when he was scheduled to attend training on his regularly scheduled day off is an adverse employment action. But any injury that Mr. Watson suffered as a result of the denial is de minimis, *see Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000) (denying a bonus is de minimis and not an adverse employment action), and does not constitute a significant change in his employment status, *see Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257.

■■ Mr. Watson next argues that being required to attend basic supervisory training and communication skills training was an adverse employment action because he was humiliated to have to attend classes designed for newly promoted supervisors. "[C]onditions of employment that are designed to harass and humiliate employees because of their race are actionable adverse employment actions under Title VII." *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir.2000). But neither a "bruised ego," *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir.1994), nor public humiliation rises to the level of an adverse employment action. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir.1989). To be actionable, the embarrassing condition must be severe or pervasive and not the result of reasonable and legitimate employment concerns. *Stockett*, 221 F.3d at 1002. Requiring Mr. Watson to attend basic supervisory and communication skills training was reasonable and legitimate. By requiring the additional training, the Postal Service avoided a possible lawsuit by another Postal employee who had accused Mr. Watson of race discrimination and had agreed to settle his claim if Mr. Watson attended additional training.

The district court properly granted summary judgment on Mr. Watson's race discrimination claim because he failed to present a genuine issue of material fact regarding whether he suffered an adverse employment action. Therefore, we need not decide whether Mr. Watson presented sufficient evidence that the Postal Service treated similarly situated employees more favorably.

**B. Retaliation**

■■ Finally, Mr. Watson argues that the district court erred in granting summary judgment because the Postal Service retaliated against him by requiring him to supervise both delivery units on April 14 and April 17, 1995, refusing to change his day off when he was scheduled to attend training on his regularly scheduled day off, and requiring him to attend basic supervisory training and communication skills training even though he had ten years of managerial experience. To establish a *prima facie* case of retaliation, Mr. Watson must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal link between his protection expression and the adverse action. *Oest*, 240 F.3d at 615–16.

As we have stated, Mr. Watson did not suffer an adverse employment action. Further, he cannot establish a causal link because his protected expression– the 1990 EEOC complaint– occurred too long ago to be causally connected to the alleged adverse actions in 1995. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (concluding that twenty months was insufficient and citing cases holding that three

and four months were insufficient); *see also Fyfe v. City of Fort Wayne,* 241 F.3d 597, 603 (7th Cir.2001) ("[T]he employer's adverse action must follow fairly soon after the employee's protected conduct."). Therefore, the district court properly granted summary judgment on Mr. Watson's retaliation claim.

AFFIRMED.