# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1130

RHONDA L. MOSER,

*Plaintiff-Appellant*,

v.

INDIANA DEPARTMENT OF CORRECTIONS,
CAMP SUMMIT BOOT CAMP, DANIEL RONAY,
individually, and in his capacity as Youth
Service Administrator, et al.,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 02 C 491—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED NOVEMBER 4, 2004—DECIDED MAY 5, 2005

———————

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Rhonda Moser filed this action
under Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§§ 2000e et seq., against the Indiana Department of

Corrections ("DOC")[1] for alleged sex discrimination, hostile work environment and retaliation. The district court granted the DOC's motion for summary judgment on the Title VII claims and dismissed the supplemental state law claims. Ms. Moser has appealed. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I
# BACKGROUND

## A. Facts

Ms. Moser began working for the DOC in 1981 at Summit Farm Work Release, which later became Camp Summit Boot Camp ("Camp Summit"), a juvenile facility. Ms. Moser started as a typist and was promoted to a secretarial position in 1990. In 1997, her position was reclassified as administrative assistant, and, in addition to her clerical duties, she acted as Camp Summit's affirmative action coordinator. Prior to her transfer to Westville Correctional Facility ("Westville") in 2001, Ms. Moser had received highly positive performance evaluations.

In 1997, Daniel Ronay began working at Camp Summit after he was transferred from his correctional officer position at the DOC's Westville Transitional Unit. In June 2000,

---

[1] The defendants argued before the district court that Camp Summit Boot Camp, Daniel Ronay and Linda Commons could not be held liable under Title VII because they were not employers as defined by the statute. Ms. Moser did not respond to the defendants' argument, and, therefore, the district court viewed her Title VII claims as relating only to the DOC. On appeal, Ms. Moser has not challenged the district court's decision.

another Camp Summit employee, Gloria Thode, filed an internal sexual harassment complaint against Ronay. At the direction of Camp Summit's then-Superintendent Cecil Davis, Ms. Moser, in her capacity as the affirmative action coordinator, investigated Thode's allegations. Ms. Moser found that the allegations could not be substantiated.

Almost a year later in April 2001, Ms. Moser complained to Superintendent Davis about Ronay's behavior. Superintendent Davis encouraged employees to resolve problems between each other, and, therefore, Ms. Moser wrote a letter to Ronay advising him that she had been offended by certain of his remarks and had felt harassed. In response, Ronay wrote a letter to Ms. Moser, in which he apologized but said that he had been offended by some of Ms. Moser's behavior as well. According to Ms. Moser, the harassment stopped after the exchange of letters. R.35, Defendant's Ex.C at 251.

Subsequently, in early August 2001, the Chief Investigator for the DOC's Office of Internal Affairs, William Plank, began to investigate Thode's harassment complaint against Ronay. As part of his investigation, Plank spoke to Ms. Moser about her earlier investigation of Thode's claims. At that time, Ms. Moser revealed to Plank that she also had felt sexually harassed by Ronay. Plank referred Ms. Moser's claim to the DOC's central office, and an investigation was commenced by Jayne Brown, a regional affirmative action coordinator.

On August 20, 2001, Linda Commons replaced Cecil Davis as Superintendent of Camp Summit. Two weeks later, Superintendent Commons held a pre-deprivation hearing for Ronay related to Thode's complaint. She concluded that Ronay had violated DOC policy and, on October 26, issued him a written reprimand in lieu of a three-day suspension.

In mid-September 2001, Brown finished her investigation of Ms. Moser's complaint against Ronay and reported that the allegations were founded. However, based on information Brown had learned during her investigation, she advised the Director of DOC's Affirmative Action Division that

> I am recommending that Ms. Rhonda Moser, Affirmative Action Coordinator at Camp Summit be relieved of the Affirmative Action duties. Information provided revealed that Ms. Moser has not always behaved in a professional manner and one that speaks well for an Affirmative Action Coordinator. She recently was heard, and admitted to, using the "f" word in the workplace. Superintendent Commons informed me she is addressing this issue with Ms. Moser.

R.35, Defendant's Ex.M at 1. In addition, Brown sent a memorandum dated October 5, 2001, to Superintendent Commons, which stated:

> During a recent investigation at Camp Summit, it was revealed that Rhonda Moser, Affirmative Action Coordinator (Administrative Assistant) had neglected to fulfill the responsibilities as facility AAC as outlined in AA policy 04-03-108.
>
> It was also learned Ms. Moser's behavior in the workplace has been questionable. It was reported and confirmed that she was aware of a sexually suggestive gift that was brought into the facility, participated in some sort of dance in the conference room and recently used very vulgar language in the workplace.
>
> For the reasons stated above, it is recommended Ms. Moser be removed as AAC.

*Id.* at 2.

A few days later, on October 8, 2001, Ms. Moser wrote to Superintendent Commons and offered an explanation for a number of incidents related to Ms. Moser's work performance. Among other things, Ms. Moser's letter admitted that she had not told the truth during her investigation of Thode's sexual harassment allegations against Ronay. R.35, Defendant's Ex.P at 2. On October 22, Ms. Moser received notice of a pre-deprivation hearing to address the following incidents:

1. The use of profanity directed towards Chuck Linebaugh on September 7, 2001 in which you stated, "Get the F*** Out of Here, Get the F*** Out."

2. The questioning of Mary Beth Jurgenson, a witness in a pre-deprivation meeting, after she left the Superintendent's office on October 5, 2001.

3. The contacting of the personal physician of Lorri Price and telling her doctor that Ms. Price has a Dr. Jeckyll and Mr. Hyde personality and then asking the doctor to give Ms. Price "drugs or some kind of counseling."

4. Based on information obtained from Jayne Brown, Northern Region Affirmative Action Coordinator. Mrs. Brown is recommending that you be relieved of the Affirmative Action duties at Camp Summit. Mrs. Brown states, "Ms. Moser has not always behaved in a professional manner and one that speaks well for an Affirmative Action coordinator."

5. As you were leaving work on October 19, you asked YSI Patrick Cleary, who was working in the Command Center, to come to your home for a drink after his shift ended (10:45 p.m.) You and Mr. Cleary then carried on a conversation regarding drinking beer and hard liquor. This conversation took place in the

> hall outside of the Command Post. Other staff and the students could hear your conversation. In addition, a parent was in the main entrance waiting to pick-up their son for a home pass and they too could hear your conversation.

R.35, Defendant's Ex.T at 1. The notice explained that Ms. Moser's behavior constituted "conduct unbecoming DOC staff," in violation of DOC policy. *Id.* On October 29, 2001, after the pre-deprivation hearing, Superintendent Commons issued a discipline to Ms. Moser, which provided:

> Based on your own admission and statements from Chuck Linebaugh, Ms. Mary Beth Jurgenson, Mr. Patrick Cleary and the Northern District's Affirmative Action Coordinator's recommendation that you be removed as Affirmative Action Coordinator for Camp Summit, I find your behavior to be a violation of policy.
>
> . . . .
>
> The serious lack of professionalism exhibited by your behavior and your removal as Affirmative Action Coordinator will make it difficult for you to perform the essential functions of your position as Personnel Director and Administrative Assistant to the Superintendent.

*Id.* at 1-2. Effective the next day, Ms. Moser was removed as affirmative action coordinator. She was issued a written reprimand in lieu of a three-day suspension and was transferred to Westville for a new assignment.

## B. District Court Proceedings

The district court granted the DOC's motion for summary judgment on all of Ms. Moser's Title VII claims. In granting summary judgment on the claim of sex discrimination, the

court determined that Ms. Moser had not established that she was meeting the DOC's legitimate job expectations or that the incidents for which she was disciplined amounted to discrimination.

With respect to Ms. Moser's hostile work environment claim, the district court took the view that the testimony of third parties about Ronay's conduct towards them had less probative value than evidence of Ronay's conduct involving Ms. Moser. In addition, the district court determined that Ronay's conduct toward Ms. Moser was not sufficiently severe or pervasive to create an objectively hostile work environment.

Finally, the district court entered summary judgment on the claim of retaliation. In reaching that decision, the court determined that Ms. Moser's transfer did not amount to a material diminution in title, responsibilities or compensation that would qualify as an adverse employment action under Title VII. Moreover, the district court decided that no reasonable jury could infer from the record that Ms. Moser's report of sexual harassment was the cause of the disciplinary action.

## II

## DISCUSSION

### A. Standard of Review

We review a district court's grant of a motion for summary judgment de novo, and we view all facts and reasonable inferences from the record in the light most favorable to Ms. Moser, the non-moving party. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352 (7th Cir. 2002). Summary judgment is appropriate if "the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affida-

vits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## B. Sex Discrimination

Ms. Moser alleges that the DOC disciplined her unfairly on the basis of her sex. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Both the district court and the parties have proceeded under the familiar indirect method of proving discrimination announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Title VII plaintiff employing this method has the burden to prove, by a preponderance of the evidence, a prima facie case of intentional discrimination. *Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1000 (7th Cir. 2000). To make the prima facie case, the plaintiff must establish that: (1) she belongs to a protected class; (2) her performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated others not in her protected class received more favorable treatment. *Id.*; *Hildebrandt v. Illinois Dep't. of Natural Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003). If the plaintiff meets her burden, a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action. *Stockett*, 221 F.3d at 1001. Should the employer meet its burden, the plaintiff must show by a preponderance of the evidence that the employer's prof-

fered reasons were merely a pretext for discrimination. *Id.* The ultimate burden of persuasion remains at all times with the plaintiff. *Id.*

In the present case, the parties' dispute centers on whether Ms. Moser has raised a genuine issue of material fact that she was performing her job according to the DOC's legitimate expectations. We agree with the district court that Ms. Moser has not made this prima facie showing. As evidence that she was performing her work in a satisfactory manner, Ms. Moser points to her laudable twenty-year performance record with the DOC before Superintendent Commons' arrival at Camp Summit. However, critical to our inquiry is Ms. Moser's performance *at the time* of the employment action. As this court has explained previously, "[a]lthough in some circumstances, previous employment history may be relevant and probative in assessing performance at the time of [the employment action], its limited utility must also be recognized. Certainly earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken." *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998).

With the relevant time frame in mind, we turn to Ms. Moser's additional contentions. She does not deny the incidents that Superintendent Commons cited as the basis for disciplinary action: using profanity; questioning a co-worker about a confidential meeting; contacting another co-worker's physician; and talking about alcohol. Rather, Ms. Moser characterizes the incidents as "absurdly minor" and baseless. Appellant's Br. at 20. She submits that other Camp Summit employees commonly used profanity and discussed drinking, that her former Superintendent had told her to contact her co-worker's physician, and that Superintendent Commons had no basis for believing that Ms. Moser had known the confidential nature of her co-worker's meeting.

The record, however, does not support Ms. Moser's claim that her reassignment was not warranted. Ms. Moser ignores the fact that Jayne Brown, the regional affirmative action coordinator, recommended that Ms. Moser be removed as the affirmative action coordinator at Camp Summit. Through investigating Ms. Moser's allegations against Ronay, Brown had learned the following: that Ms. Moser "ha[d] not always behaved in a professional manner and one that speaks well for an Affirmative Action Coordinator"; that "Ms. Moser's behavior in the workplace has been questionable"; and that Ms. Moser "had neglected to fulfill the responsibilities as facility AAC." R.35, Defendant's Ex.M at 1-2. On this record, a rational factfinder could not conclude that Ms. Moser was meeting her employer's legitimate expectations. Because Ms. Moser has failed to establish an element of her prima facie case of discrimination, the district court's grant of summary judgment was appropriate.[2]

---

[2] Moreover, even if Ms. Moser could make a prima facie case of discrimination, her claim could not avoid summary judgment because she has not presented sufficient evidence of pretext to rebut the DOC's non-discriminatory reasons for her transfer. Ms. Moser submits that the incidents leading to her discipline were too minor to have motivated the employment action. She further argues that Superintendent Commons disciplined her for minutiae but did not discipline others, such as Daniel Ronay for his sexual harassment. Again, fatal to Ms. Moser's assertion of pretext is Brown's conclusion that Ms. Moser's conduct called into question her ability to serve as an affirmative action co-ordinator. Furthermore, even if Superintendent Commons had underestimated Ms. Moser's maturity and judgment to be trusted with the duties of an affirmative action coordinator, that does not demonstrate pretext for purposes of Title VII. *See Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 562 (7th Cir. 2004) (stating
(continued...)

### C. Hostile Work Environment

Ms. Moser also alleges that Ronay's jokes and remarks subjected her to a hostile work environment. " '[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.' " *Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 755 (7th Cir. 1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)). To establish the prima facie case of hostile environment sexual harassment, a plaintiff must show that: (1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability. *Hall*, 276 F.3d at 354-55.

In the present case, the parties' dispute focuses on the third element. To evaluate whether a plaintiff's work environment was hostile, we examine all of the circumstances, such as the " 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir. 1993) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). We evaluate those factors from both an objective and a subjective viewpoint:

---

[2] (...continued)
that, even if employer had made the wrong decision, the plaintiff would need to show that the stated reasons were lies covering a discriminatory motive).

> "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is not a Title VII violation."

*Id.* (quoting *Harris*, 510 U.S. at 21-22).

Ms. Moser alleges that Ronay's remarks were part of his daily, non-ceasing quest to degrade women at Camp Summit. Appellant's Br. at 6-7, 29. Ms. Moser has put forward the following examples as evidence of Ronay's harassment: he spoke down to her and other female employees; he made a reference to her "tits"; he told several new male employees to watch out because Ms. Moser likes good-looking men; he commented on female job applicants' physical appearance; he asked Ms. Moser if she had gotten a new set of legs; he used profanity in his office, which Ms. Moser overheard; he told a joke about a boy's anatomy; he made an innuendo about his penis size when a dimension was mentioned by a female co-worker; he told others, outside of Ms. Moser's presence, that a female co-worker was running a whorehouse; and he said that a female co-worker "just needed a good f***." R.35, Defendant's Ex.A at 3, ¶11; R.35, Ex.C at 182-216. Furthermore, Ms. Moser claims that Ronay's behavior interfered with her work performance because his comments to new male employees made dealing with those employees more difficult and his comments about female job applicants made the hiring process humiliating. Appellant's Br. at 8-9, 29. Finally, she claims that Ronay's comments kept her "on edge and stressed" and made her feel demoralized. *Id.* at 8.

Even assuming that Ms. Moser perceived her work environment as hostile or abusive due to Ronay's behavior,[3] her claim cannot withstand summary judgment because, on this record, a reasonable person likely would not have found the Camp Summit work environment to be hostile within the meaning of Title VII. Ms. Moser contends that the district court failed to place enough weight on the testimony of other DOC employees about comments Ronay had made to them—remarks that did not involve Ms. Moser and that Ms. Moser did not hear. However, our court has considered such "second-hand" harassment, although relevant, to be less objectionable than harassment directed at the plaintiff. *See, e.g., McKenzie v. Milwaukee County*, 381 F.3d 619, 624 (7th Cir. 2004). Certainly, Ronay's behavior was inappropriate, and it likely impacted adversely on the work environment at Camp Summit and would have made a reasonable employee uncomfortable. Nonetheless, the handful of comments of a sexual nature that Ronay made to Ms. Moser, apparently in the context of headless jokes, as opposed to serious or threatening comments, simply does not rise to the level of harassment our court has held actionable. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that Title VII is not a code of general civility and simple teasing, offhand comments and isolated incidents that are not extremely serious do not amount to actionable harassment); *Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir. 1999) (stating that "sporadic use of abusive language, gender-related jokes, and occasional teasing are fairly

---

[3] Ms. Moser's own testimony suggests that she did not find her work environment at Camp Summit to be hostile. For instance, she stated: "I probably would have continued [to work at Camp Summit until I retired] because I really liked it there. I enjoy a small facility . . . . I enjoyed the personnel, and all aspects of what I was doing there . . . ." R.35, Defendant's Ex.C at 46.

commonplace in some employment settings and do not amount to actionable harassment" (internal quotation marks and citation omitted)); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995) (finding no actionable harassment when the employer did not threaten the plaintiff, did not touch her, did not expose himself or show dirty pictures, and did not invite her explicitly or impliedly to have sex with him or to go out on a date with him). Accordingly, summary judgment was appropriate on Ms. Moser's hostile work environment claim.

## D. Retaliation Claim

Ms. Moser contends that she was reassigned to Westville in retaliation for her complaints against Ronay. Title VII prohibits employers from punishing employees for complaining about discrimination or other practices that violate Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method. *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). The direct method requires the plaintiff to show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two. *Id.* Under the alternative indirect method, the plaintiff must establish a prima facie case of retaliation by showing that: (1) she engaged in a statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.[4] *Id.* If

---

[4] This court has clarified that, at the summary judgment stage, a plaintiff seeking to prove retaliation under the indirect method
(continued...)

the plaintiff establishes the prima facie case, the burden shifts to the employer to present evidence of a non-discriminatory reason for its employment action. *Id.* If the employer meets its burden, the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual. *Id.* Ms. Moser has not presented sufficient evidence under either of the two recognized approaches.

Beginning with the second element of the direct case,[5] an adverse employment action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). Although Ms. Moser's transfer did not change her title, salary or benefits, she submits that the discipline amounted to an adverse employment action because her duties have diminished in importance, challenge and variety. Ms. Moser complains that she was placed in the lowest possible clerical job. She further claims that she

---

[4]  (...continued)
need not show even an attenuated causal link between the protected activity and the adverse employment action. *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005) (citing *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002)).

[5]  Relying on *Durkin v. City of Chicago*, 341 F.3d 606 (7th Cir. 2003), the DOC claims that Ms. Moser did not engage in statutorily protected conduct because she did not complain about Ronay's sexual harassment through the DOC's formal complaint process. Appellee's Br. at 29. The DOC has waived this argument by not raising it before the district court. *See Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) (a party waives any argument that it did not make to the district court).

no longer was able to interact with the DOC's central office and other outside entities, to help employees with their insurance and payroll problems or to work with the students at Camp Summit. However, any lateral job transfer by definition alters an employee's responsibilities and work conditions, and not every change that makes an employee unhappy is actionable. *O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004). A subjective preference for the former position, without more, does not demonstrate an adverse employment action. Ms. Moser offers no evidence to support her assertion that her clerical duties at Westville are a material reduction in responsibility from her duties at Camp Summit.

Ms. Moser continues, however, by arguing that the discipline amounted to an adverse employment action because it ruined her reputation and diminished her chances for transfer or promotion. Appellant's Br. at 35. The district court gave little weight to this argument because Ms. Moser's discipline had been removed from her file. Ms. Moser points us to the affidavit of Shirl Meyer, part of DOC's personnel staff, who stated that "[a] DOC employee is not permitted to transfer for 3 years after a discipline. The reality within the DOC is that a discipline of any kind damages the reputation of an employee, and that employee's career opportunities within the DOC greatly diminish." R.35, Tab L at ¶ 7. These circumstances, viewed most favorably to Ms. Moser, may suggest a materially adverse employment action. Even so, we need not decide the issue here, because Ms. Moser has failed to prove the third element of her prima facie case, causation.

To prove this element, Ms. Moser must show that the DOC would not have taken the adverse employment action "but for" her protected activity. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002). Ms. Moser maintains that the short period of time (about one month) between

Superintendent Commons' arrival at Camp Summit and the initiation of the disciplinary process requires an inference of retaliation. However, suspicious timing alone rarely is sufficient to create a triable issue. *See Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Ms. Moser further suggests that Ronay was a favored employee who "squire[d]" and "manipulated" Superintendent Commons into retaliating against Ms. Moser. Appellant's Br. at 5-6, 37-38. As the district court recognized, however, at the summary judgment stage courts are not required " 'to draw every conceivable inference from the record, . . . only reasonable ones.' " R.43 at 21-22 (quoting *Gleason v. Mesirow Fin. Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997)). Ms. Moser's speculation that Ronay manipulated Superintendent Commons raises no more than a metaphysical doubt as to whether the DOC would have disciplined Ms. Moser had she not complained about Ronay. Indeed, as we noted earlier in this opinion, numerous incidents brought Ms. Moser's professionalism and ability to serve as an affirmative action coordinator into question. Therefore, this record does not suggest a causal link between Ms. Moser's reassignment and her protected expression.

Ms. Moser's retaliation claim also cannot prevail under the indirect method. Again, the record does not support that Ms. Moser was meeting the DOC's legitimate expectations. In addition, Ms. Moser has not attempted to show that the DOC treated more favorably a similarly situated employee who did not engage in protected activity. For all of these reasons, summary judgment properly was granted on the retaliation claim.

## Conclusion

Accordingly, we affirm the judgment of the district court.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*