In the

# United States Court of Appeals
### For the Seventh Circuit

—————————

No. 06-3479

CARLA A. YUKNIS,

*Plaintiff-Appellant*,

*v.*

FIRST STUDENT, INC.,

*Defendant-Appellee.*

—————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 6191—**Wayne R. Andersen**, *Judge.*

—————————

SUBMITTED FEBRUARY 21, 2007—DECIDED MARCH 28, 2007

—————————

Before EASTERBROOK, *Chief Judge*, and POSNER and EVANS,
*Circuit Judges*.

POSNER, *Circuit Judge.* The plaintiff, who worked for
the defendant as a part-time school bus driver, com-
plains in this Title VII suit about the creation of a hostile
working environment, plus retaliation for complaining
to the EEOC. There is no evidence at all of retaliation, so
we confine our discussion to the charge of hostile working
environment.

The plaintiff had complained, initially to the company's
regional vice-president, that "all levels of personnel" at the
facility at which she worked "show blatant disrespect for

their marital vows, watch pornography, use foul language, tell vulgar jokes, . . . [and] gamble openly." She accused one of her coworkers of giving an assistant manager of the facility "red underwear made to look like an elephant's head, with a sexually-suggestive trunk" at an office party, and accused another—the manager, no less—that among other enormities he had referred to a female bus driver (not the plaintiff) as a "fat ass," had had an affair with another female driver, sold Avon products at work, told the plaintiff that his teenage daughter had watched him walk from the shower to his bedroom naked, and described an incident in which his male cat "raped" his female cat. There is more but this recital will give the flavor. Some of the plaintiff's complaints were substantiated (such as the gambling and the unauthorized sale of Avon products) and the offenders rebuked by upper management. Other of her complaints (for example about the manager's watching pornography on his computer) were not substantiated. The plaintiff was fired for undermining internal relations at the facility, and damaging the credibility of the facility's management, by her incessant complaining.

None of the speech and conduct that she complained about was directed at her, except that the manager had told the story of his naked stroll to the plaintiff directly and that once when she approached him about buying an Avon product called "Sensual Moments" he had said if that was what she wanted she should join him in his office and shut the door. This pair of suggestive comments, standing alone, falls far short of the degree of harassment that creates a hostile working environment actionable under Title VII. See, e.g., *Moser v. Indiana Department of Corrections*, 406 F.3d 895, 902-03 (7th Cir. 2005); *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1145 (7th Cir. 1997);

*Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995); *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871 (5th Cir. 1999). There is no liability if "the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex." *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996); see also *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998).

The other incidents that the plaintiff complains about illustrate the difference between mere offense on the one hand and serious harassment on the other. The fact that one's coworkers do or say things that offend one, however deeply, does not amount to harassment if one is not within the target area of the offending conduct—if, for example, the speech or conduct is offensive to women and one is a man, or offensive to whites and one is a black. One could *be* the target, as the plaintiff was in the two incidents we mentioned, and it was targeting that the Supreme Court seems to have had in mind in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986), when it spoke of a worker's "right to work in an environment free from discriminatory intimidation, ridicule, and insult." See, e.g., *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 332-33 (4th Cir. 2003) (en banc); *Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959 (8th Cir. 1993). Or one could be in the target *area* because a group of which one was a member was being vilified, although one was not singled out. *Jackson v. Quanex Corp.*, 191 F.3d 647, 661 (6th Cir. 1999), and cases cited there; *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir. 1990). Had the manager said that all women are bitches, cf. *Patt v. Family Health Systems, Inc.*, 280 F.3d 749, 754 (7th Cir. 2002); *Markham v. White*, 172 F.3d 486, 488 (7th Cir. 1999); *Jennings v. University of North*

*Carolina*, 444 F.3d 255, 272-73 (4th Cir. 2006), any woman who heard the remark would wince, because the blanket charge would encompass her.

Some cases term what we are calling the "target area" form of actionable harassment "second-hand harassment" and intimate, or even, as in *Gleason v. Mesirow Financial, Inc.*, *supra*, 118 F.3d at 1144, state, that it is categorically less serious than harassment specifically aimed at the plaintiff. E.g., *Patt v. Family Health Systems, Inc.*, *supra*, 280 F.3d at 754; *Smith v. Northeastern Illinois University*, 388 F.3d 559, 567 (7th Cir. 2004). But the line that runs between "you are a bitch" and "all women are bitches [and you are a woman (understood)]" is quite a fine one, a point that a belittling term like "second hand" tends to obscure. The term (virtually confined to cases in this circuit) has no analytic function and is better avoided.

In suggesting the alternative term "target area," we do not mean to suggest that there must be an intention of causing distress or offense. A working environment may be deeply hurtful to women even though the men who created it were merely trying to please themselves, and were thus guilty of insensitivity rather than aggression. Cf. *Markham v. White*, *supra*, 172 F.3d at 492; *Andrews v. City of Philadelphia*, *supra*, 895 F.2d at 1485-86; *Bundy v. Jackson*, 641 F.2d 934, 945 (D.C. Cir. 1981). The darts were aimed elsewhere, and hit the women by accident. But if as in this case the charge is the creation of a working environment hostile to women, the conduct must be the kind that makes the workplace uncomfortable for women, as distinct from making it uncomfortable for cat lovers, for people who violate work rules by selling Avon products at work, for people offended by adultery, for gamblers, and for fastidious people, who abhor foul language. The

point is elementary: the creation of a hostile working environment is actionable under Title VII only when the hostility is to a group (or specific members of a group), such as women, whom the statute protects. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1993); *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007); *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 762-66 (6th Cir. 2006).

Context may be critical to determining the object of hostility. If a male worker tells a female coworker that his male cat is raping his female cat, the remark could, in context, indicate a disregard for women's feelings (or even a veiled threat), rather than a disregard for female cats' feelings. But the plaintiff made no effort to establish such a context. Even the fact that another female bus driver was called a "fat ass" did not, standing alone, without context to illuminate it, imply discrimination against women. A man can be called a "fat ass," just as a man can be called a "bitch." More important, a gender-specific term of abuse, such as "son of a bitch," need not imply hostility based on the abused person's sex, *Kriss v. Sprint Communications Co.*, 58 F.3d 1276, 1281 (8th Cir. 1995), any more than saying "*she* is a bad worker" need imply hostility based on her sex.

More important still, the cat-rape anecdote and the "fat ass" comment are examples of comments that while they may, depending on their context, offend in respects relevant to Title VII, have only a tangential intersection with the plaintiff. When the manager called one of the woman drivers a "fat ass," he may have been using a term that he would not have used of a man, but what if anything was he saying about the *plaintiff*, either directly or indirectly? And what if a male coworker is believed

(apparently mistakenly in this case, but that is unimportant) to be watching pornography on his office computer? It wasn't any of the plaintiff's business what the manager was looking at on his computer. It is not as if pornographic pictures were exhibited on the walls of the workplace or emailed to the plaintiff. *Markham v. White*, *supra*, 172 F.3d at 488, 493; *Quinn v. Consolidated Freightways Corp.*, 283 F.3d 572, 579 (3d Cir. 2002); *O'Rourke v. City of Providence*, 235 F.3d 713, 719-23 (1st Cir. 2001). The relation between the manager's watching pornography on his own screen and the plaintiff's working environment was almost as attenuated as if she had learned that he watches pornography on his computer at home.

One is put in mind of the distinction famously drawn by John Stuart Mill, in chapter 4 of *On Liberty* (1859), between "self-regarding" and "other-regarding" conduct. The former term refers to acts that inflict a direct harm on one, such as an assault, or a breach of contract, or an insult, and the latter to acts that harm one only in the sense that one is offended to learn about the conduct. The example Mill gave of an other-regarding act was the distress that people in Britain felt upon learning that Mormons in Utah (this was before the Mormon Church renounced polygamy) were practicing polygamy six thousand miles away. The counterpart today would be a worker offended by the fact that a coworker was of a different race or religion. The manager's watching pornography was likewise in the nature of an "other-regarding" act so far as the plaintiff was concerned.

Intermediate between a "self-regarding" and an "other-regarding" act is the situation in *Leibovitz v. New York City Transit Authority*, 252 F.3d 179, 189-90 (2d Cir. 2001), where the plaintiff learned of a hostile (to women) work-

ing environment in *another* workplace, though of the same employer.

The more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that the worker's working environment was actually made unbearable, as the worker claims. Offense based purely on hearsay or rumor really is "second hand"; it is less credible, and, for that reason and also because it is less confrontational, it is less wounding than offense based on hearing or seeing (for example, seeing the pornographic pictures with which the workplace is festooned); and it is also more difficult for the employer to control.

The American workplace would be a seething cauldron if workers could with impunity pepper their employer and eventually the EEOC and the courts with complaints of being offended by remarks and behaviors unrelated to the complainant except for his having overheard, or heard of, them. The pluralism of our society is mirrored in the workplace, creating endless occasions for offense. Civilized people refrain from words and conduct that offend the people around them, but not all workers are civilized all the time. Title VII is not a code of civility.

AFFIRMED.

A true Copy:

     Teste:

                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*

USCA-02-C-0072—3-28-07